4-6048                                       143 S. W. 2d 874

Opinion delivered October 14, 1940.

*Pickens & Pickens,* for appellant.

*Luther H. Cavaness* and *J. Lloyd Shouse,* for appellee.

McHANEY, J.    Appellant brought this action in replevin to recover from the possession of appellee, Burns, certain personal property described in the complaint, and which constituted the equipment of a bulk oil plant located on the railroad right-of-way in the town of Flippin, Arkansas.    Bond was given to obtain the immediate possession thereof, conditioned as required by law, on which an order of delivery and summons was issued and served on said appellee who gave bond to retain the possession.    An answer was filed by him in which he disclosed that the other appellee, Blankenship, was his associate or partner, and he was later made a party defendant to the action.    In addition to a general denial of all the material allegations of the complaint, he alleged he entered into a written contract with Maurice Sloans, Sr. and Jr., who were operating under the name of Essarco Petroleum Company by which they agreed to sell to appellees gasoline, kerosene, motor oils and sundries at wholesale for them to resell at their station in Flippin and adjacent territory for a

period of five years with a renewal option; that, subsequent to and in connection with said written contract; the Sloans desired to sell them large quantities of equipment and supplies, exceeding $3,000, and to induce them to do so, the Sloans agreed orally to place and have installed in Flippin the very property involved in this action and to deliver same to appellees to hold as a pledge and guaranty of the faithful performance of the written contract, would furnish the products therein set out at the prices mentioned therein for the full period of said contract, and further that they would spend a large portion of their time at Flippin and in said territory drumming up business for appellees and that if the Sloans failed to perform all the conditions of both the written and oral contracts appellees should hold the properties here involved until a full settlement was had; that appellees would not have purchased said material and supplies, except for said promises, in a sum exceeding $3,000; that before the consummation of said purchases the Sloans put the property here involved on the grounds and directed appellees to install same at Sloan's expense; that they installed said property and incurred an expense of $207, for which they have not been paid and they claim a lien on said property for same. Other damages were claimed against the Sloans as a ground to deny possession of the property to appellant. A reply was filed by appellant denying all the material allegations of the answer. Trial resulted in a verdict and judgment for appellees, and this appeal followed.

We agree with appellant that the learned trial court erred in refusing to direct a verdict for him at his request. Taking the testimony of appellee Burns and viewing it in the light most favorable to appellees, as we are required to do in determining its sufficiency to support the verdict and judgment, we think it is not sufficiently substantial to justify the finding made. Blankenship did not testify. Burns' testimony was that Sloan built a bulk oil plant on land leased by Sloan from the railroad company. Appellees built a retail plant on the same plot of ground which they leased from Sloan,

and that Sloan was indebted to them for $207 for labor and materials furnished. He is contradicted in this testimony by his own letters written after the alleged indebtedness accrued, in none of which did he ever mention or claim that Sloan was indebted to appellees in any amount whatsoever. Numerous remittances were made by appellees to Sloan to cover amounts due him for merchandise and requests for additional time in which to pay. Approximately 50 letters were written by Burns to Sloan beginning in 1936 and running to October, 1937, and in none of them did he ever intimate that Sloan owed him $207 or any other amount, except that, under date of December 15, 1936, he rendered Sloan a bill for $18.31 for labor of Loyne Hurst on the bulk plant, storage on truck tank and two items of freight paid by him, which bill was paid by Sloan, and nothing was said concerning any additional indebtedness of $207 on the bulk plant, or anything else. Appellees leased the bulk plant and ground for their service station from Sloan under, a written contract, in which they agreed to and did pay Sloan $30 per month. If the bulk plant were pledged to them, why was it not mentioned in the lease? It appears to us that this is an effort to vary the terms of both the written petroleum sales contract, of April 1, 1936, in which one paragraph states: "This contract contains the entire agreements of the parties hereto. There are no oral promises or warranties affecting it and none shall be valid," and the written lease contract covering the operation of the bulk plant, which, it is conceded, cannot be done. It is also claimed that Sloan breached the petroleum sales contract by failing to drum up business for him in his territory, but the contract makes no such provision, and neither contract provides for a pledge of the property.

We conclude, therefore, that there was no pledge. It is undisputed that Sloan sold the property to appellant who purchased same in good faith. He is, therefore, entitled to the possession of same and whatever damages he has sustained by reason of being deprived thereof. The judgment is reversed and the cause remanded for this purpose.